# EXHIBIT B

## DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT

This DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT (this "Agreement"), entered into December __, 2021, between RESURGE, L.L.C. a New Jersey limited liability company, with its offices located at 40 Outlook Lane, Freehold, New Jersey 07728 (the "Borrower") and Onelink Solutions, Inc., a New Jersey limited liability company with an address of 104 Ridge Road, Lyndhurst, NJ 07071 (together with any successors or assigns, herein the "Lender").

WHEREAS, on November 26, 2021 (the "Petition Date"), Borrower filed a voluntary petition for relief under SubChapter V of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") before the United States Bankruptcy Court of the District of New Jersey (the "Bankruptcy Court") (such Chapter 11 proceeding administered as Case No. 21-19109 and is herein referred to as the "Chapter 11 Case"), and Borrower continues to operate its business and manage its property as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code;

WHEREAS, Borrower has requested that Lender provide it with a secured credit facility in a principal amount of up to Five Hundred Thousand Dollars ($500,000.00); and

WHEREAS, Lender is willing to provide such advances to Borrower under a credit facility only upon the terms and conditions set forth herein.

NOW, THEREFORE, FOR VALUE RECEIVED, and in consideration of the granting by Lender of financial accommodations to or for the benefit of Borrower, including without limitation respecting the Obligations (as hereinafter defined), Borrower represents and agrees with Lender, as of the date hereof and as of the date of each advance, credit and/or other financial accommodation, as follows:

### 1. THE LOAN

1.1     Loan. Subject to the terms and conditions of this Agreement, Lender hereby agrees to make a loan to Borrower, on and after the date hereof, in one or more advances of the principal hereunder (each, an "Advance"). All principal advanced hereunder is hereinafter referred to collectively as the "Loan". The Loan shall be evidenced by that certain Promissory Note, dated as of the date hereof (the "Note"), given by Borrower to the order of Lender, in the maximum principal amount of Five Hundred Thousand Dollars ($500,000.00). This Agreement, the Note, and any and all other documents, amendments or renewals executed and delivered by any Person in connection with any of the foregoing, are collectively hereinafter referred to as the "Loan Documents".

1.2    <u>Interest; Monthly Payments; Maturity.</u>

(a)    All Advances shall bear interest on the actual principal amounts thereof from time to time outstanding at the Applicable Interest Rate, be calculated on the basis of a 360-day year for the actual number of days elapsed, and be payable monthly in arrears on the first day of each calendar month for the preceding calendar month, beginning on the first day of the first calendar month following the Closing Date; <u>provided</u>, <u>however</u>, that, from and after the occurrence of any Event of Default and during its continuance, the Applicable Interest Rate with respect to all Advances shall be the Default Rate. In the event that any payment of principal or interest is not paid when due, Lender shall have the right to impose a Late Fee on each such delinquent payment.

(b)    All outstanding principal and accrued and unpaid interest thereon (and all other amounts due and owing to Lender under this Agreement or any other Loan Document) shall be due and payable on the Maturity Date (as hereinafter defined).

(c)    Borrower shall be obliged to pay principal, interest and all other Obligations payable hereunder or under any other Loan Documents as and when due, without any deduction whatsoever, including, but not limited to, any deduction for any defense, setoff or counterclaim.

1.3    <u>Certain Definitions.</u> For purposes of this agreement, the following terms shall have the following meanings:

(a)    "<u>Advance Conditions</u>" shall mean each of the following:

(i)    each of the representations, warranties, and covenants contained herein shall be true and correct in all respects on and as of the date hereof and on the date of any Advance;

(ii)    no circumstance exists which may, in the reasonable determination of Lender, be expected to have a Material Adverse Effect (as hereinafter defined);

(b)    "<u>Applicable Interest Rate</u>" shall mean 12%.

(c)    "<u>Business Day</u>" shall mean any day other than a Saturday, Sunday, Day of Observance, or day which is or shall be in the State of New Jersey a legal holiday or a day on which banking institutions are required or authorized to close.

(d)    "<u>Collateral</u>" shall mean all of Borrower's present and future right, title and interest in, to and under the following described property (unless otherwise defined herein, each capitalized term used herein shall have the meaning

given to it in the UCC (as hereinafter defined)):

(i) all now existing and hereafter acquired or arising Accounts, Goods, General Intangibles (including, without limitation, all Intellectual Property of Borrower), Payment Intangibles, Deposit Accounts (including, without limitation, the Deposit Account and the Receivables Account), Chattel Paper (including, without limitation, Electronic Chattel Paper), Documents, Instruments, Software, Investment Property, Letters of Credit, Letter-of-Credit Rights, Commercial Tort Claims, money, Equipment, Inventory, Fixtures, and Supporting Obligations, together with all products of and Accessions to any of the foregoing and all Proceeds of any of the foregoing (including without limitation all insurance policies and proceeds thereof);

(ii) to the extent, if any, not included in clause (i) above, each and every other item of personal property and fixtures, whether now existing or hereafter arising or acquired, including, without limitation, all licenses, contracts and agreements, and all collateral for the payment or performance of any contract or agreement, together with all products and Proceeds (including all insurance policies and proceeds) of any Accessions to any of the foregoing; and

(iii) all present and future business records and information relating to any of the foregoing, including computer tapes and other storage media containing the same and computer programs and software (including without limitation, source code, object code and related manuals and documentation and all licenses to use such software) for accessing and manipulating such information.

(e) "Default Rate" shall mean 6% per annum over the otherwise Applicable Interest Rate then and from time to time thereafter in effect.

(f) "Event of Default" has the meaning set forth in Section 6.

(g) "Final Order" shall mean, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Case in compliance with Bankruptcy Rules 4001 and 6004(g), which order shall be satisfactory in form and substance to Lender, together with all extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes Borrower to obtain credit, incur (or guaranty) Indebtedness and grant Liens under this Agreement and the other Loan Documents, as the case may be, includes customary rulings and findings by the Bankruptcy Court binding on all parties (including, without limitation, finding and ruling that the loans made pursuant to the Final Order are made in good faith within the meaning of Section 364(e) of the Bankruptcy Code).

(h)    "<u>Financing Orders</u>" shall mean, collectively, the Interim Order and the Final Order.

(i)    "<u>Indebtedness</u>" of a Person at a particular date shall mean all obligations of such Person which in accordance with GAAP would be classified upon a balance sheet as liabilities and in any event, without limitation by reason of enumeration, shall include all indebtedness, debt and other similar monetary obligations of such Person whether direct or guaranteed, and all premiums, if any, due at the required prepayment dates of such indebtedness, and all indebtedness secured by a Lien on assets owned by such Person, whether or not such indebtedness actually shall have been created, assumed or incurred by such Person. Any indebtedness of such Person resulting from the acquisition by such Person of any assets subject to any Lien shall be deemed, for the purposes hereof, to be the equivalent of the creation, assumption and incurring of the indebtedness secured thereby, whether or not actually so created, assumed or incurred.

(j)    "<u>Intellectual Property</u>" shall mean all intellectual property rights of any kind, including the following, whether registered or unregistered, including any and all applications to register: (a) trademarks and service marks, trade dress, trade names and other indications of origin, applications or registrations in any jurisdiction pertaining to the foregoing and all goodwill and common-law rights associated therewith; (b) Patents; inventions (whether or not patentable) and know-how; (c) trade secrets, including confidential information and the right in any jurisdiction to limit the use or disclosure thereof; (d) copyrighted and copyrightable works and writings (including computer software), and applications or registrations in any jurisdiction for the foregoing; and (e) domain names, social and mobile media identifications and registrations pertaining thereto and all intellectual property used in connection with or contained in web sites.

(k)    "<u>Interim Order</u>" shall mean the order of the Bankruptcy Court entered in the Chapter 11 Case in compliance with Bankruptcy Rules 4001 and 6004(g) which order shall be satisfactory in form and substance to Lender, together with all extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes Borrower to obtain credit, incur (or guaranty) Indebtedness and grant Liens under this Agreement and the other Loan Documents, as the case may be, includes customary rulings and findings by the Bankruptcy Court binding on all parties (including, without limitation, finding and ruling that the loans made pursuant to the Final Order are made in good faith within the meaning of Section 364(e) of the Bankruptcy Code).

(l)    "<u>Investment Property</u>" means a security, whether certificated or uncertificated, security entitlement, securities account, contract, or commodity account.

(m)     "Late Fee" means the 10% late fee provided for in the Note.

(n)     "Lien" shall mean any mortgage, deed of trust, pledge, hypothecation, assignment, security interest, lien (whether statutory or otherwise, choate or inchoate), Charge, claim, deemed trust or encumbrance, or preference, priority or other security agreement or preferential arrangement held or asserted in respect of any asset of any kind or nature whatsoever including, without limitation, any conditional sale or other title retention agreement, any lease having substantially the same economic effect as any of the foregoing, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code, or comparable law of any jurisdiction.

(o)     "Material Adverse Effect" shall mean any event, change, circumstance, condition, effect, development or state of facts that, individually or in the aggregate, (i) is materially adverse to the business, assets, liabilities, condition (financial or otherwise) or results of operations of the Borrower, taken as a whole, or (ii) affects the validity or enforceability of this Agreement or the Liens on the Borrower's Collateral granted hereby.

(p)     "Maturity Date" means the earlier of (i) one year from the date of this agreement, and (ii) the acceleration of the Loan by Lender upon an Event of Default.

(q)     "Obligation(s)" shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, owing by Borrower to Lender at any time, of each and every kind, nature and description, whether arising under this Agreement or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by Borrower to Lender; or are due indirectly by Borrower to Lender as endorser, guarantor or other surety, or as borrower of obligations due third persons which have been endorsed or assigned to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Loan Documents. Said term shall also include all interest and other charges chargeable to Borrower or due from Borrower to Lender from time to time and all fees, costs and expenses referred to in this Agreement or any other Loan Document.

(r)      "Permitted Liens" shall mean the Liens securing all Prepetition Indebtedness.

(s)     "Person" or "party" shall mean individuals, partnerships, corporations, limited liability companies and all other entities.

(t)    "Prepetition" shall mean the time period ending immediately prior to the commencement of the Chapter 11 Case.

(u)    "Prepetition Indebtedness" shall mean all Indebtedness of Borrower outstanding or arising Prepetition.

(v)    "UCC" shall mean the Uniform Commercial Code in effect in the State of New Jersey from time to time.

All words and terms used in this Agreement other than those specifically defined herein shall have the meanings accorded to them in the UCC, and if not defined therein, to its normal and customary use with the industry. Definitions referenced or used herein are for interpretation of this Agreement and the Loan Documents only and any such reference to any jurisdiction other than the State of New Jersey shall have no impact on jurisdiction or venue, with total jurisdiction and venue being reserved to the State of New Jersey.

1.4    Advances and Prepayments.

(a)    Lender shall establish a line of credit under the Loan (the "Credit Line") pursuant to which Borrower may request, from time to time, Advances by submitting to Lender a request for Advance in the form attached hereto as Exhibit 1 (a "Request for Advance").

(b)    Upon satisfaction of the Advance Conditions with respect to a request for an Advance under the Credit Line hereunder, Lender shall disburse the amount of such Advance in accordance with the applicable Request for Advance.

(c)    On the date hereof, and subject to the satisfaction or waiver by Lender of the Advance Conditions, Lender shall make an initial Advance to Borrower in the amount of $150,000.00, which amount shall be deposited by Lender into the Deposit Account, and which thereafter may be used by Borrower for the purposes set forth herein.

(d)    No Advance may be requested by Borrower after the Maturity Date or following an Event of Default.

(e)    Borrower may prepay the outstanding principal on the Loan, in whole or in part, at any time.

1.5    Monthly Statement. At the option of Lender, at the end of each month, Lender will render to Borrower a statement of the Credit Account, showing all applicable credits and debits. Each statement shall be for informational purposes only and shall not be deemed binding on Lender.

## 2. GRANT OF SECURITY INTEREST

2.1     <u>Grant of Security Interest</u>. In consideration of Lender's extending credit and other financial accommodations to Borrower, Borrower hereby grants to Lender a security interest in, a lien on and pledge and assignment of the Collateral (as hereinafter defined), including, without limitation, all claims against third parties arising out of or related to the Collateral. The security interest granted by this Agreement is given to and shall be held by Lender as security for the payment and performance of all Obligations (as hereinafter defined), including, without limitation, all amounts outstandingpursuant to the Loan Documents.

2.2     <u>Ordinary Course of Business</u>. Lender hereby authorizes and permits Borrower to receive from any Person all amounts due as proceeds of the Collateral at Borrower's own cost and expense, and also liability, if any; and Lender may, following an Event of Default which has not been cured or waived by Lender or on the Maturity Date, terminate all or any part of the authority and permission herein or elsewhere in this Agreement granted to Borrower with reference to the Collateral. All proceeds of and collections of the Collateral shall be held in trust by Borrower for Lender and shall not be commingled with Borrower's other funds or deposited in any bank account of Borrower other than the Deposit Account; and, from and after an Event of Default which has not been cured or waived by Lender, Borrower agrees to deliver to Lender on the dates of receipt thereof by Borrower, duly endorsed to Lender or to bearer, or assigned to Lender, as may be appropriate, all proceeds of the Collateral in the identical form received by Borrower.

## 3. REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender that the following are, and after giving effect to the transactions contemplated by this Agreement and the other Loan Documents will be, true, correct and complete:

3.1     <u>Organization and Qualification</u>. Borrower is a duly formed and existing limited liability company under the laws of the State of New Jersey with the exact legal name set forth in the first paragraph of this Agreement and is duly qualified to conduct business in all jurisdictions necessary to the conduct of its business. Borrower is in good standing under the laws of the State of New Jersey and such other jurisdictions has the power to own its property and conduct its business as now conducted and as currently proposed to be conducted.

3.2     <u>Valid Obligations</u>. Subject to the entry of the Financing Orders, the execution, delivery and performance of the Loan Documents have been duly authorized by all necessary action and the Loan Documents represent the legal, valid and binding obligation of Borrower and are fully enforceable according to their terms, except as limited by laws relating to the enforcement of creditors' rights.

3.3     <u>Conflicts</u>. There is no provision in Borrower's organizational or charter documents, if any, or in any indenture, contract or agreement to which Borrower is a party which prohibits, limits or restricts the execution, delivery or performance of its obligations under the Loan Documents.

3.4     <u>Approvals</u>. Other than approval of the Bankruptcy Court pursuant to the Financing Orders, the execution, delivery and performance of the Loan Documents do not require any approval of or filing with any governmental agency or authority or any other Person.

3.5     <u>Title to Collateral</u>. At the date hereof Borrower is (and as to Collateral that Borrower may acquire after the date hereof, will be) the lawful owner of its assets constituting the Collateral, and the Collateral and each item thereof is, will be and shall continue to be free of all restrictions, liens, encumbrances or other rights, title or interests (other than the security interest therein granted to Lender hereby), credits, defenses, recoupments, set-offs or counterclaims whatsoever, other than the Permitted Liens. Borrower has and will have full power and authority to grant to Lender a security interest in the Collateral and Borrower has not transferred, assigned, sold, pledged, encumbered, subjected to lien or granted any security interest in, and will not transfer, assign, sell, pledge, encumber, subject to lien or grant any security interest in any of the Collateral (or any of Borrower's right, title or interest therein), to any person other than Lender or the holder of a Permitted Lien. The Collateral is and will be valid and genuine in all respects. No part of Borrower's Collateral (or the validity or enforceability by Lender thereof) other than the Accounts is or shall be contingent upon the fulfillment of any agreement or condition whatsoever. Borrower will warrant and defend Lender's right to and interest in the Collateral against all claims and demands of all persons whatsoever.

3.6     <u>Third Parties</u>. Lender shall not be deemed to have assumed any liability or responsibility to Borrower or any third Person for the correctness, validity or genuineness of any instruments or documents that may be released or endorsed to Borrower by Lender (which shall automatically be deemed to be without recourse to such Lender in any event) or for the existence, character, quantity, quality, condition, value or delivery of any goods purporting to be represented by any such documents; and Lender, by accepting such security interest in the Collateral owned by Borrower, or by releasing any Collateral to Borrower, shall not be deemed to have assumed any obligation or liability to any Account Debtor or to any other third party, and Borrower agrees to indemnify and defend Lender and hold it harmless in respect to any claim or proceeding brought by any third party arising out of any matter referred to in this paragraph.

3.7     <u>Taxes</u>. Borrower has filed, or will file, all Federal, state and other tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from Borrower have been fully paid. Borrower has established on its books reserves adequate for the payment of all Federal, state and other tax liabilities (if any).

3.8     <u>Compliance with Law</u>.  Borrower is in compliance with all applicable law.

3.9     <u>Reorganization Matters.</u>

(a)     The Chapter 11 Case was commenced on the Petition Date in accordance with applicable law. Both the Interim Order and the Final Order shall provide that good, sufficient and proper notice of the motion seeking approval of the Financing Order and this Agreement, the hearing to consider approval of the Interim Order, and the hearing to consider approval of the Final Order, has been given by Borrower. Borrower shall

give, on a timely basis as specified in the Financing Orders, all notices required to be given to all parties specified in the Financing Orders.

(b)    After the entry of the Interim Order and pursuant to, and to the extent provided in, the Interim Order and the Final Order, the Advances will be secured by a valid and perfected Lien that is prior to all other Liens on all the Collateral.

(c)    The Interim Order (with respect to the period prior to the date of entry of the Final Order) and the Final Order (beginning on and after the date of entry of the Final Order), as the case may be, is in full force and effect and has not been reversed, stayed, vacated, modified or amended.

(d)    Notwithstanding the provisions of Section 362 of the Bankruptcy Code, upon the Maturity Date, the Lender shall be entitled to immediate payment of such Advances and to enforce the remedies provided for hereunder, subject to the Interim Order (with respect to the period prior to the date of entry of the Final Order) and the Final Order (with respect to the period from and after the date of entry of the Final Order).

3.10   <u>Disclosure</u>. This Agreement (together with all exhibits and schedules hereto), the other Loan Documents and the other agreements, certificates and other documents furnished to Lender by or on behalf of Borrower do not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained herein or therein, in the light of the circumstances under which they were made, not misleading. There is no fact known to Borrower which has not been disclosed to Lender in writing which could reasonably be expected to have a Material Adverse Effect.

## 4. AFFIRMATIVE COVENANTS

4.1   <u>Payments and Performance</u>. Borrower will duly and punctually pay all Obligations becoming due to Lender in accordance with this Agreement and the other Loan Documents and will duly and punctually perform (after giving effect to all notice, grace and cure periods, if any) all Obligations on its part to be done or performed under this Agreement.

4.2   <u>Conduct of Business</u>. Borrower will maintain its existence in good standing and materially comply with all laws and regulations of the State of New Jersey and of any other governmental authority which may be applicable to it or to its conduct of its business; provided that this covenant shall not apply to any tax, assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

4.3   <u>Taxes</u>. Borrower will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, old age benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained. Lender may, at its option, from time to time, discharge any taxes resulting in a lien or encumbrance on the

Collateral, or other charges resulting in liens or encumbrances on any of the Collateral, and Borrower will pay to Lender on written demand or Lender in its sole discretion may charge to Borrower all amounts so paid or incurred by it.

4.4     <u>Indemnity</u>. Borrower shall protect, defend (by counsel selected by Lender and reasonably acceptable to Borrower), indemnify and hold harmless Lender and Lender's respective officers, directors, partners, shareholders, employees, affiliates, agents, attorneys, lessees, successors and assigns and any successors to Lender's interest in the Loan, their officers, directors, partners, shareholders, employees, affiliates, agents, attorneys, lessees, successors and assigns (collectively, the "<u>Indemnitees</u>") from and against all liabilities (including sums paid in settlement of claims), losses, costs, obligations, demands, suits, liens, damages, fines (including any sums ordered to be paid or expended by Indemnitees by any governmental entity as a fine), penalties or damages arising as a direct or indirect result of Borrower, any affiliate of Borrower, or the Loan.

4.5     <u>Insurance</u>. Borrower will maintain (or cause to be maintained) in force insurance on Borrower's properties against risks customarily insured against by companies engaged in businesses similar to that of Borrower containing such terms and written by such companies as may be satisfactory to Lender, such insurance to be payable to Lender as its interest may appear in the event of loss and to cause Lender to be named as additional insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without Lender's approval; and all such policies shall provide that they may not be canceled without first giving at least thirty (30) days' written notice of cancellation to Lender; <u>provided</u>, <u>however</u>, that if the policy does not provide at least thirty (30) days' written notice of cancellation to Lender, then Borrower shall, within five (5) days of the date of premium payment by Borrower, provide evidence to Lender that the premiums on any policy of insurance required to be maintained hereunder have been paid in full on or prior to the date on which such premium was due to the insurer. In the event that Borrower fails to provide evidence of such insurance, Lender may, at is option, secure such insurance and charge the cost thereof to Borrower. At the option of Lender, all insurance proceeds received shall be applied as a payment on account of the Obligations. From and after the occurrence of an Event of Default which has not been cured or waived by Lender, Lender is authorized to cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to Lender, as a payment on account of the Obligations.

4.6     <u>Notification of Default</u>. Within five (5) Business Days of becoming aware of the existence of any condition or event which constitutes an Event of Default, or any condition or event which would upon notice or lapse of time, or both, constitute an Event of Default, Borrower shall give Lender written notice thereof specifying the nature and duration thereof and the action being or proposed to be taken with respect thereto.

## 5. NEGATIVE COVENANTS

5.1     <u>Limitations on Indebtedness</u>. Borrower shall not, without the prior written consent of Lender in each instance, issue any evidence of indebtedness or create, assume, guarantee, become contingently liable for, or suffer to exist indebtedness in addition to indebtedness to Lender, other than customary post-Petition unsecured trade payables incurred in the ordinary course of business.

5.2     Loans or Advances. Borrower shall not make any loans or advances to any individual, firm or corporation, including without limitation its officers and employees; provided, however, that Borrower may make advances to its employees, including its officers, with respect to expenses incurred or to be incurred by such employees in the ordinary course of business which expenses are reimbursable by Borrower.

5.3     Merger. Borrower will not, without the prior written consent of the Lender in the Lender's sole discretion in each instance, merge or consolidate or be merged or consolidated with or into any other entity, unless prior to or concurrently therewith Lender is paid in full for all Obligations under the Loan Documents.

5.4     Capital Expenditures. Borrower shall not, directly or indirectly, make or commit to make capital expenditures by lease, purchase, or otherwise, except in the ordinary and usual course of business for the purpose of replacing machinery, equipment or other personal property which, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in Borrower's business.

5.5     Sale of Assets. Borrower shall not sell, lease or otherwise dispose of any of its assets, except in the ordinary and usual course of business, unless prior to or concurrently therewith Lender is paid in full for all Obligations under the Loan Documents (subject to any notice period or restriction contained herein regarding Borrower's right to prepay the Loan) or except for the purpose of replacing machinery, equipment or other personal property which, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in Borrower's business, provided that fair cash consideration is received therefor. Borrower shall not sell, transfer, convey, encumber, or otherwise alienate any of its right, title, or interest in or to any Collateral.

5.6     Restriction on Liens. Borrower shall not grant any security interest in, or mortgage of, its respective properties or assets including the Collateral, other than Permitted Liens or such liens as are in favor of Lender.  Borrower shall not agree with any person other than Lender to not grant any security interest in, or mortgage of, any of its properties or assets including the Collateral.

5.7     Other Business. Borrower shall not engage in any business other than the business in which it is engaged on the date hereof.

5.8     Change of Name. Borrower shall not change its legal name or the state or jurisdiction of its organization, without giving Lender at least thirty (30) days' prior written notice thereof.

5.9     Organizational Documents. Borrower shall not modify, alter, amend, or restate in any way Borrower's certificate of incorporation (or equivalent formation document) nor Borrower's bylaws (or equivalent operating document) without the prior written consent of Lender in each instance.

5.10    <u>Leases</u>. Borrower shall not amend, modify, or supplement any lease in any way that would materially increase Borrower's obligations or materially decrease Borrower's rights or materially impact the value of the lease as collateral for the Loan without the Lender's prior written consent in each instance, which consent will not be unreasonably withheld or delayed.

## 6. DEFAULT

6.1    <u>Default</u>. An "<u>Event of Default</u>" shall mean the occurrence of one or more of any of the following events:

(a)    (i) failure to pay principal or interest hereunder when due, whether at maturity, by acceleration or otherwise, or (ii) failure to pay, within (10) Business Days of the date due, any other amounts due hereunder; or

(b)    the default by Borrower of any of the covenants, terms or provisions of this Agreement;

(c)    default of any other liability, obligation or undertaking of Borrower hereunder or under any other Loan Document or otherwise, which failure continues for ten (10) Business Days' after its occurrence (provided that if such default is not reasonably susceptible of cure within said ten (10) Business Day period, and Borrower commences a cure of such default within said ten (10) Business Day period, and thereafter diligently pursues such cure, then an Event of Default shall only occur if such failure continues for thirty (30) days after its occurrence;

(d)    if there shall have been a breach by Borrower of any representation or warranty contained in this Agreement or any other Loan Document or otherwise, which breach continues for ten (10) Business Days after its occurrence;

(e)    the liquidation, termination or dissolution of Borrower, or the merger or consolidation of any such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(f)    the service upon Lender of a writ in which Lender is named as trustee of Borrower for the Loan;

(g)    Borrower breaches the terms of, or default in any of its obligations under this Agreement or any other Loan Document;

(h)    unless the Obligations will be fully and indefeasibly paid and the Lenders' commitments to make Advances terminated pursuant hereto, the bringing of a motion, taking of any action, or the filing of any plan of reorganization or disclosure statement attendant thereto by Borrower in

the Chapter 11 Case: (w) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement; (x) to grant any Lien other than Permitted Encumbrances upon or affecting any Collateral; (y) except as provided in the Interim Order or the Final Order, as applicable, to use cash collateral of Lender under Section 363(c) of the Bankruptcy Code without the prior written consent of Lender; or (z) any other action or actions adverse to Lender or its rights and remedies hereunder or its interest in the Collateral;

(i)     unless the Obligations will be fully and indefeasibly paid and Lender's commitments to make Advances terminated pursuant thereto, the filing of any plan of reorganization or disclosure statement attendant thereto by Borrower or any other Person in the Chapter 11 Case to which Lender does not consent or otherwise agree to the treatment of its claims;

(j)     except as may otherwise be approved by Lender in its sole discretion, the entry of an order in the Chapter 11 Case confirming a plan or plans of reorganization that does not contain a provision for repayment in full in cash of all of the Obligations under this Agreement on or before the effective date of such plan or plans;

(k)     the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Agreement or the other Loan Documents or the Interim Order or the Final Order, as applicable, without the written consent of Lender, or the filing of a motion for reconsideration with respect to the Interim Order or the Final Order, as applicable;

(l)     the payment of, or application for authority to pay, any Prepetition Indebtedness without the Lender's prior written consent or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement;

(m)     the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code against or with respect to any of the Collateral;

(n)     the appointment of an interim or permanent trustee in the Chapter 11 Case (other than the SubChapter V Trustee) or the appointment of a receiver or examiner in the Chapter 11 Case with expanded powers (i.e., powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code pursuant to Section 1106(b) of the Bankruptcy Code) to operate or manage the financial affairs, the business, or reorganization of Borrower; or the sale, without Lender's consent, of all or substantially all of Borrower's assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise that does not provide for payment in full of the Obligations and termination of Lender's commitment to make Advances;

(o)     the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code, or the filing by Borrower of a motion or other pleading seeking the dismissal of the Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise, in each instance without the Lender's written consent;

(p)     the entry of an order by the Bankruptcy Court granting relief from, terminating, or modifying the automatic stay of Section 362 of the Bankruptcy Code (or holding that such stay does not apply) with respect to Collateral having a value in excess of $100,000 or otherwise;

(q)     the entry of an order by the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, under circumstances that would have a Material Adverse Effect, ordering that one or more executory contracts to which Borrower is a party are to be rejected, if such rejection has not been consented to by Borrower and Lender;

(r)     the entry of an order by the Bankruptcy Court that subordinates any claim or Lien of the Lender under this Agreement, the Financing Orders or any other Loan Document;

(s)     except with the consent of Lender, or in connection with a final determination of the Bankruptcy Court that Lender has breached provisions of this Agreement applicable to such payments, the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement; provided, that, it shall not constitute an Event of Default under this clause (s) if a payment that is required to be repaid or is avoided is a payment that was made to the Lender for the purpose of reimbursing the Lender for professional fees or expenses incurred by professionals advising or representing the Lender;

(t)     the failure of Borrower to perform any of its obligations under the Interim Order or the Final Order, as applicable;

(u)     the occurrence of any Material Adverse Effect;

(v)     the commencement by any Person of any suit, action or proceeding that challenges the validity of any loan or credit agreement, promissory notes, instruments, documents or other agreements with respect to any loans or extensions of credits by Lender to Borrower or the validity or priority of any Lien on any collateral granted to Lender as security for the repayment of any such loans or extensions of credit respect; or

6.2

(a)    the entry of an order in any of the Chapter 11 Case granting any other superpriority administrative claim or Lien equal or superior to that granted to Lender, without Lender's consent.

6.3    <u>Acceleration</u>.

(a)    If an Event of Default under <u>Section 6.1</u> shall have occurred, all Obligations shall become immediately due and payable without notice or demand.

(b)    Lender is hereby authorized, at its election, after an Event of Default shall have occurred which has not been cured or waived by Lender, without any further demand or notice except to such extent as notice may be required by applicable law, and without the need for relief from the automatic stay, to take possession and/or sell or otherwise dispose of all or any of the Collateral at public or private sale; and Lender may also exercise any and all other rights and remedies of a secured party under the UCC or which are otherwise accorded to it in equity or at law, all as Lender may determine, and such exercise of rights in compliance with the requirements of law will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. If notice of a sale or other action by Lender is required by applicable law, unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Borrower agrees that ten (10) days' written notice to Borrower, or the shortest period of written notice permitted by such law, whichever is smaller, shall be sufficient notice; and that to the extent permitted by law, Lender, its officers, attorneys and agents may bid and become purchasers at any such sale, if public, and may purchase at any private sale any of the Collateral that is of a type customarily sold on a recognized market or which is the subject of widely distributed standard price quotations. Any sale (public or private) shall be without warranty and free from any right of redemption, which Borrower shall waive and release after default upon Lender's request therefor, and may be free of any warranties as to the Collateral if Lender shall so decide. No purchaser at any sale (public or private) shall be responsible for the application of the purchase money.

Any balance of the net proceeds of sale remaining after paying all Obligations of Borrower to Lender shall be returned to such other party as may be legally entitled thereto; and if there is a deficiency, Borrower shall be responsible for the same, with interest. Upon demand by Lender, Borrower shall assemble the Collateral and make it available to Lender at a place designated by Lender which is reasonably convenient to Lender and Borrower. Borrower hereby acknowledges that Lender has extended credit and other financial accommodations to Borrower upon reliance of Borrower's granting Lender the rights and remedies contained in this Agreement including without limitation the right to take immediate

possession of the Collateral upon the occurrence of an Event of Default which has not been cured or waived by Lender and Borrower hereby acknowledges that Lender is entitled to such equitable and injunctive relief to enforce any of its rights and remedies hereunder and Borrower hereby waives any defense to such equitable or injunctive relief based upon any allegation of the absence of irreparable harm to Lender.

(c)      Lender shall not be required to marshal any present or future security for (including but not limited to this Agreement and the Collateral subject to the security interest created hereby), or guarantees of, the Obligations or any of them, or to resort to such security or guarantees in any particular order; and all of its rights hereunder and in respect of such securities and guarantees shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may, Borrower hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of Lender's rights under this Agreement or under any other instrument evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or guaranteed, and to the extent that it lawfully may do so, Borrower hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, Lender shall have no duty as to the collection or protection of the Collateral or any income thereon, nor as to the preservation of rights against prior parties, nor as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

6.4     <u>Nonexclusive Remedies</u>. All of Lender's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

6.5     <u>Setoff</u>. In addition to any other rights which Lender may have under applicable law, upon the occurrence of an Event of Default hereunder, Lender shall have a right to apply any of Borrower's property held by it to reduce the Obligations.

6.6     <u>No Action by Bankruptcy Court Required</u>. Except as set forth in the Financing Orders, no rights or remedies available to Lender shall require any application or motion to, or order of, the Bankruptcy Court; <u>provided</u>, <u>however</u>, that enforcement of rights or remedies against the Collateral shall require five (5) days' notice to Borrower and to any statutory committee and the Bankruptcy Court, and, if any hearing shall be requested after delivery of such notice, the sole issue to be determined at such hearing shall be whether an Event of Default has occurred.

## 7. MISCELLANEOUS

7.1     <u>Waivers</u>. Borrower waives notice of intent to accelerate, notice of acceleration, notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations, and all other notices, consents to any renewals or extensions of time of payment thereof, and

generally waives any and all suretyship defenses and defenses in the nature thereof.

7.2 <u>Severability</u>. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

7.3 <u>Set-Off</u>. Borrower hereby grants to Lender a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from Lender (or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between Lender and Borrower, or any third party acting on Lender's behalf, including the Account Bank (collectively, the "<u>Lender Affiliates</u>")) to Borrower and any cash, securities, instruments or other property of Borrower in the possession of Lender or any Lender Affiliate, whether for safekeeping or otherwise, or in transit to or from Lender or any Lender Affiliate (regardless of the reason Lender or Lender Affiliates had received the same or whether Lender or Lender Affiliates has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of Borrower to Lender or any Lender Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of Borrower to Lender or any Lender Affiliate as are then due and unpaid, whether or not demand has been made and whether or not other collateral is then available to Lender or any Lender Affiliate.

7.4 <u>Indemnification</u>. Borrower shall protect, defend (by counsel selected by Lender), indemnify and hold harmless Lender and Lender's officers, directors, partners, shareholders, employees, affiliates, agents, attorneys, lessees, successors and assigns and any successors to Lender's interest in the Loan, their officers, directors, partners, shareholders, employees, affiliates, agents, attorneys, lessees, successors and assigns (collectively, the "<u>Indemnitees</u>") from and against all liabilities (including sums paid in settlement of claims), claims brought or threatened against Lender (as well as from reasonable attorneys' fees and expenses in connection therewith), losses, costs, obligations, demands, suits, liens, damages, fines (including any sums ordered to be paid or expended by Indemnitees by any governmental entity as a fine, penalty or damages) arising as a direct or indirect result of Borrower's failure to perform any of the agreements, terms or conditions of this Agreement or the Loan Documents required to be performed by Borrower, or for the breach by Borrower of any representation, warranty, or covenant contained herein or in any other Loan Document (including, without limitation any third party claims arising therefrom), except for any claim for which an Indemnitee has been determined, with finality, by a court of competent jurisdiction, that such Indemnitee has committed gross negligence or willful misconduct.  The indemnification provided by this <u>Section 7.4</u> shall survive payment of the Obligations, any termination of this Agreement, and/or release or discharge executed by Lender in favor of Borrower.

7.4 <u>Costs and Expenses</u>. Borrower shall pay to Lender any and all costs and expenses (including, without limitation, reasonable attorneys' fees, and disbursements, court costs, litigation and other expenses) incurred or paid by Lender in establishing, maintaining, protecting or enforcing any of Lender's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by Lender in defending Lender's security interest in, title or right to the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Obligations. Each of the costs and expenses incurred by Lender hereunder

and payable by Borrower shall be deemed evidenced by and added to the outstanding principal balance of the Note.

7.5    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

7.6    Complete Agreement. This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes, all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

7.7    Binding Effect of Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all commitments of Lender hereunder are terminated and all Obligations hereunder are fully paid. Lender may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of such Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Agreement, and the Collateral. Borrower may not assign or transfer any of its rights or obligations under this Agreement. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

7.8    Further Assurances. Borrower will from time to time execute and deliver to Lender, and take or cause to be taken, all such other or further action as Lender may reasonably request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Agreement and the other Loan Documents or to vest more fully in or assure to Lender the security interest in the Collateral granted to Lender by this Agreement or to comply with applicable statute or law and to facilitate the collection of the Collateral (including, without limitation, the endorsement of promissory notes and instruments and notifications to obligors on the Collateral). To the extent permitted by applicable law, Borrower authorizes Lender to file financing statements, continuation statements or amendments without Borrower's signature appearing thereon, and any such financing statements, continuation statements or amendments may be signed by Lender on behalf of Borrower, if necessary, and may be filed at any time in any jurisdiction. Lender may at any time and from time to time file financing statements, continuation statements, debentures, mortgages, and any other documents allowed under the laws of the State of New Jersey or any other applicable jurisdiction, and amendments thereto which contain any information required by the laws of the State of New Jersey or any other applicable jurisdiction for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Borrower is an organization, the type of organization and any organization identification number issued to Borrower. Borrower agrees to furnish any such information to Lender promptly upon written request. In addition, Borrower shall at any time and from time to time take such steps as Lender may reasonably request in writing for Lender (i) to obtain an acknowledgement, in form and substance satisfactory to Lender, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for Lender, (ii) to obtain possession and control of any Collateral comprised of deposit

accounts, electronic chattel paper, letter of credit rights or investment property, with any agreements establishing control to be in form and substance satisfactory to Lender, and (iii) otherwise to insure the continued perfection and priority of Lender's security interest in any of the Collateral and the preservation of its rights therein. Borrower hereby constitutes Lender its attorney-in-fact to execute, if necessary, and file all filings required or so requested in writing for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Agreement terminates in accordance with its terms, all Obligations are paid in full and the Collateral is released.

7.9    Amendments and Waivers. This Agreement may not be amended, or the obligations of the parties hereto modified, except in a writing executed by all of the parties. No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of such Lender on any future occasion.

7.10    Terms of Agreement. This Agreement shall continue in full force and effect so long as any Obligations or obligation of Borrower to Lender shall be outstanding, or Lender shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Borrower and Lender and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between Borrower and Lender be construed to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides. Borrower may upon at least thirty (30) days prior written notice by Borrower to Lender elect to terminate this Agreement by paying the Obligations in full. If Borrower has sent a notice of termination pursuant to the provisions of this Section, then Lender's commitments to Borrower hereunder shall terminate on the date set forth as the date of termination of this Agreement.

7.11    Notices. Any notice under or pursuant to this Agreement shall be a signed writing or other authenticated record. Any such notice shall be deemed duly received and effective (i) if delivered in hand or by telecopier to, or received by, any officer or agent of Borrower or Lender, upon such delivery or receipt, or (ii) if sent by overnight courier, on the next business day after being so sent, or (iii) if mailed by registered or certified mail, return receipt requested, postage prepaid, and properly addressed to Borrower or Lender, two (2) business days after being so mailed. A party's proper address is that set forth for such party in this Agreement or such address as that party may from time to time hereafter designate by notice to the other party. As of the date hereof, any notice under any Loan Document shall be transmitted to the following address:

<div style="margin-left:2em">

If to Borrower: Resurge, L.L.C.,
      40 Outlook Lane
      Freehold, New Jersey 07728

If to Lender: Onelink Solutions, Inc.
     104 Ridge Road
     Lyndhurst, NJ 07071

</div>

    7.12   Governing Law. This Agreement and all transactions thereunder or pursuant thereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties thereunder and in all other respects by the domestic laws of the State of New Jersey without reference or giving effect to any choice of law or conflicts of law principles thereof.

    7.13   Reproductions. This Agreement and all documents which have been or may be hereinafter furnished by Borrower to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

    7.14   Venue. Except as otherwise expressly provided in this Agreement, the Borrower and Lender agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought exclusively in, and each of Borrower and Lender hereby irrevocably consents to the jurisdiction of, the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and, in the event the Bankruptcy Court does not have or declines to exercise jurisdiction, other than in any state or federal court located in the State of New Jersey, irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court (or such other state or federal court) or that any such suit, action or proceeding which is brought in the Bankruptcy Court (or such other state or federal court) has been brought in an inconvenient forum.  Process in any such suit, action or proceeding may be served on Borrower or Lender anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court (or such other state or federal court). Borrower and Lender hereby consent to and grant any such court jurisdiction over their person and, to the extent permitted by applicable Law, over the subject matter of such dispute and agree that mailing of process or other papers in connection with any such action or proceeding in the manner provided in this Agreement or in such other manner as may be permitted by Law, shall be valid and sufficient service thereof.

    7.15   JURY WAIVER. BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) TO THE FULLEST EXTENT ALLOWED BY THE LAWS OF THE STATE OF NEW JERSEY, WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. BORROWER CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

    7.16   No Partnership or Joint Venture. Nothing contained in this Agreement or the other Loan Documents shall be deemed to create an equity investment in Borrower on the part of Lender or

a partnership or joint venture between Lender and Borrower, it being the intent of the parties hereto that only the relationship of lender and borrower shall exist with respect to the Loan. Borrower agrees that it shall report this transaction for income tax purposes, and file all related tax returns, in a manner consistent with the form of this transaction as a loan.

7.17    Attorneys' Fees. In the event of any dispute between the parties to this Agreement, Lender shall be entitled to collect, *inter alia*, its reasonable attorneys' fees and out- of-pocket expenses.

7.18    Certification. The individual(s) signing this Agreement on behalf of Borrower, by his or her signature hereon, hereby certifies for the benefit of Lender, that all information submitted to Lender in connection with the underwriting of the Loan is true and correct in all material respects on and as of the date of this Agreement.

[NO FURTHER TEXT ON THIS PAGE]

Executed as of December_____, 2021.

<u>BORROWER</u>:  Resurge, L.L.C.


By:_____
    Name:
    Title:


<u>ACCEPTED</u>:  Onelink Solutions, Inc.


By:_____
    Name:
    Title:  Authorized Signatory

## EXHIBIT 1
## FORM OF REQUEST FOR ADVANCE

[LETTERHEAD OF BORROWER]

[DATE]

*Via electronic mail only*
Onelink Solutions, Inc.
104 Ridge Road
Lyndhurst, NJ 07071

Attention:

> **Re:    Loan from Onelink Solutions, Inc., to Resurge, L.L.C., dated as of December ___, 2021, in the maximum principal amount of $500,000.00**

Ladies and Gentlemen:

The undersigned are the "Borrower" (and herein so-called) under that certain Debtor-in-Possession Loan and Security Agreement, dated December___, 2021 (the "Loan Agreement"), by and between Borrower and Onelink Solutions, Inc. Capitalized terms used and not herein definedshall have the respective meanings ascribed thereto in the Loan Agreement.

Borrower hereby requests that Lender advance the amount of $[_____], pursuant to the terms of the Loan Agreement. Borrower hereby directs that such advance be transmitted, by wire transfer, to the following account:

> _____
> _____
> _____
> Attn:   Resurge, L.L.C.
>         Account No. _____

To induce Lender to make the advance requested above, the undersigned hereby certify to Lender as follows:

1.    All information, including without limitation, all representations, exhibits, financial statements and other materials, submitted to Lender by Borrower in connection with or in support of the Loan continues to be correct and accurate as of the date hereof; and

2.    Borrower has not suffered or incurred any Material Adverse Change since the date of the last financial statement submitted by such person or entity to Lender; and

3.      No Event of Default has occurred and is continuing or with notice or the lapse of time or both will occur.

Very truly yours,

RESURGE, L.L.C.


By:_____
        Name:
        Title: